1  Steven M. Cvitanovic (Bar No. 168031)
   Jessica M. Lassere (Bar No. 286724)
2  HAIGHT BROWN & BONESTEEL LLP
   Three Embarcadero Center, Suite 200
3  San Francisco, California 94111
   Telephone:    (415) 546-7500
4  Facsimile:    (415) 546-7505
   e-mail:  scvitanovic@hbblaw.com
5            jlassere@hbblaw.com

6  Attorneys for Plaintiff
   MP NEXLEVEL OF CALIFORNIA, INC.
7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                       SACRAMENTO DIVISION

11 MP NEXLEVEL of California, Inc.,        )  Case No.
                                           )
12            Plaintiff,                    )  COMPLAINT FOR DAMAGES FOR:
                                           )
13       v.                                 )  (1)  BREACH OF CONTRACT;
                                           )  (2)  BREACH OF THE IMPLIED
14 CVIN, LLC dba VAST NETWORKS,             )  COVENANT OF GOOD FAITH AND FAIR
   CALAVERAS COMMUNICATIONS               )  DEALING;
15 COMPANY, SEBASTIAN                       )  (3)  BREACH OF WARRANTY OF PLANS
   ENTERPRISES, INC., VOLCANO             )  AND SPECIFICATIONS;
16 COMMUNICATIONS COMPANY,                  )  (4)  BREACH OF IMPLIED WARRANTY
   STAGELINE COMMUNICATIONS,              )  OF PLANS AND SPECIFICATIONS;
17 INC., THE PONDEROSA TELEPHONE           )  (5)  VIOLATION OF CIVIL CODE
   COMPANY, SIERRA TEL                    )  SECTION 8800 FOR FAILURE TO PAY
18 COMMUNICATIONS GROUP,                    )  PROGRESS PAYMENTS;
   VARNET, INC., CAL-ORE TELEPHONE        )  (6)  FORECLOSURE ON MECHANICS
19 CO., THE SISKIYOU TELEPHONE             )  LIEN;
   COMPANY, THE CORPORATION FOR           )  (7)  QUANTUM MERUIT;
20 EDUCATION NETWORK INITIATIVES          )  (8)  INJUNCTIVE RELIEF;
   IN CALIFORNIA, and DOES 1 to 500,      )  (9)  VIOLATION OF CALIFORNIA CIVIL
21                                          )  CODE SECTION 8700; and
              Defendants.                   )  (10) UNJUST ENRICHMENT
22 _____)

23       NOW COMES plaintiff MP Nexlevel of California, Inc. ("Plaintiff") alleging the

24 following:

25                 **INTRODUCTION, JURISDICTION, AND VENUE**

26       1.    This is a civil action brought by Plaintiff, a direct contractor, against

27 developer entities Corporation for Education Network Initiatives in California ("CENIC"),

28

1  CVIN, LLC dba Vast Networks ("CVIN"), and CVIN's members, alleged herein to be
2  alter egos of CVIN and/or in a partnership with CVIN for $18,142,505 owed by contract or
3  otherwise in connection with MP Nexlevel's construction of a large-scale broadband
4  infrastructure project through the Central Valley of California, along with consequential
5  damages stemming from CVIN's breach of contract, in addition to interest, attorneys' fees,
6  and costs.

7      2.      Jurisdiction is conferred upon this Court based on a diversity of citizenship
8  under 28 U.S.C. section 1332 as the amount in controversy well exceeds $75,000 and as
9  this action is by and between Plaintiff, a citizen of Minnesota, and Defendants, all
10 California entities.

11     3.      Venue is proper in the Eastern District of California under either 28 U.S.C.
12 sections 1391(1) and 1391(2) as the Eastern District is where (1) the majority of the events
13 giving rise to this claim took place; and (2) every defendant, except for CENIC, has its
14 principle place of business.  Furthermore, venue is proper in the Sacramento Division of
15 this Court under Local Rule 120(d) as the broadband infrastructure construction project
16 giving rise to this action occurred in Calaveras, Fresno, Kings, Kern, Mariposa, Merced,
17 Madera, Stanislaus, Tuolumne, and Tulare, among others and numerous defendants reside
18 in counties within the Sacramento Division.

19                              **THE PARTIES**

20     4.      Plaintiff is, and at all times mentioned herein, was a corporation licensed to
21 do business in California and duly licensed as a contractor (State License No.:  907019)
22 and engaged in the contracting business under the laws of the State of California with its
23 principal place of business located in Maple Lake, Minnesota.

24     5.      Defendant Corporation for Education Network Initiatives in California
25 ("CENIC"), is an IRS Section 501(c)(3) nonprofit corporation organized under the laws of
26 California, with its principal place of business in La Mirada, California in Los Angeles
27 County.

28

MP18-0000003
10026517.1                                    2

Case No.
COMPLAINT FOR DAMAGES

1          6.          Defendant CVIN, LLC dba Vast Networks ("CVIN") is a California limited

2    liability company with its principal place of business in Fresno, California in Fresno

3    County.

4          7.          Organized in 1995, CVIN is a joint enterprise comprised of affiliates of

5    several independent telephone companies located in central and northern California for the

6    purpose of providing telecommunications services.  More recently, CVIN pursued federal

7    and state funding to develop a large-scale broadband infrastructure project to link

8    numerous northern and central California communities.  On information and belief, CVIN

9    is a shell company which its LLC members formed and capitalized as needed for the

10   purpose of developing telecommunications capabilities generally and, more recently, to

11   serve as the developer for the project known as the Central Valley Next Generation

12   Broadband Infrastructure Project "CVNGBIP."

13         8.          On information and belief, CVIN's LLC members are the following

14   defendant telecommunications companies: (1) Calaveras Communications Company;

15   (2) Sebastian Enterprises, Inc.; (3) Volcano Communications Company; (4) Stageline

16   Communications, Inc.; (5) The Ponderosa Telephone Company; (5) Sierra Tel

17   Communications Group; (6) Varnet, Inc.; (7) Cal-Ore Telephone Co.; (8) The Siskiyou

18   Telephone Company; and (9) Ducor Telephone Company (collectively the "CVIN

19   Member Defendants").

20         9.          Calaveras Communications Company is a California company with its

21   principal place of business in Copperopolis, California in Calaveras County.

22         10.         Sebastian Enterprises, Inc. is a California company with its principal place of

23   business in Kerman, California in Fresno County.

24         11.         Volcano Communications Company is a California company with its

25   principal place of business in Pine Grove, California in Amador County.

26         12.         Stageline Communications, Inc. is a California company with its principal

27   place of business in O'Neals, California in Madera County.

28

Case No.
COMPLAINT FOR DAMAGES

13.     The Ponderosa Telephone Company is a California company with its principal place of business in O'Neals, California in Madera County.

14.     Sierra Tel Communications Group is a California company with its principal place of business in Oakhurst, California in Madera County.

15.     Varnet, Inc. is a California company with its principal place of business in Bakersfield, California in Kern County.

16.     Cal-Ore Telephone Co. is a California company with its principal place of business in Dorris, California in Siskiyou County.

17.     The Siskiyou Telephone Company is a California company with its principal place of business in Etna, California in Siskiyou County.

18.     Ducor Telephone Company is a California company with its principal place of business in Bakersfield, California in Kern County.

19.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names.  Plaintiff will seek leave of court to amend this Complaint to show their true names and capacities when the same have been ascertained.

20.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as Does 51 through 500, inclusive, are unknown to Plaintiff but these fictitious defendants are owners of properties that have benefitted from the installation of the CVIN cable system.  Plaintiff will amend this Complaint to add such fictitious entities and at a later date and following recordation and foreclosure of liens on the various parcels that benefit from the improvements described herein.

**FACTUAL BACKGROUND**

21.     CVNGBIP is a large-scale broadband infrastructure project.  The aim of the project is to deploy a 1,371-mile fiber backbone network through 18 Central Valley counties, including Amador, Calaveras, Colusa, El Dorado, Fresno, Kings, Kern,

Case No.
COMPLAINT FOR DAMAGES

1   Mariposa, Merced, Madera, Nevada, Placer, San Joaquin, Stanislaus, Sutter, Tuolumne,

2   Tulare, and Yuba counties.

3       22.    On information and belief, the CVNGBIP broadband network was designed

4   to contain 720 newly constructed miles of fiber and the leasing of 164 miles of dark fiber.

5       23.    The CVNGBIP project consists of the installation of broadband fiber through

6   the use of plowing, trenching, and directional boring.  A portion of the fiber is also

7   attached to bridges or installed aerially on existing poles.  On information and belief, the

8   "backbone" fiber conduits then stem out to various "Anchor Institutions," such as schools,

9   hospitals, and public libraries, through above ground "cabinets" along the fiber routes.

10       24.    On information and belief, until the CVNGBIP is complete and broadband

11   services are operational, CVIN has only three sources of revenue: (1) its LLC members;

12   (2) a $6,659,967 grant from the California Advanced Services Fund ("CASF"), which was

13   awarded by the California Public Utilities Commission ("PUC Grant"); and (3) a

14   $46,619,757 grant paid for by the American Recovery and Reinvestment Act ("ARRA")

15   stimulus funds by the federal granting agency the Broadband Technology Opportunities

16   Program ("BTOP"), and administered through the National Telecommunications and

17   Information Administration ("NTIA"), (the "NTIA Grant").

18       25.    On March 26, 2010, CVIN submitted a grant application to NTIA for ARRA

19   stimulus funds to launch the CVNGBIP project. On the NTIA Grant application, CENIC

20   was named as a proposed sub-recipient of the grant.  Significantly, Mr. Douglas, the

21   President of CVIN represented the following in the application:

22

23   I certify that I have examined this application, that all of the information and
responses in this application, including certifications, and forms submitted,
all of which are part of this grant application, are material representations of

24   fact and true and correct to the best of my knowledge, that the entity(ies) that
is requesting grant funding pursuant to this application and any subgrantees

25   and subcontractors will comply with the terms, conditions, purposes, and
federal requirements of the grant program; that no kickbacks were paid to

26   anyone; and that a false, fictitious, or fraudulent statements or claims on this
application are grounds for denial or termination of a grant award, and/or

27   possible punishment by a fine or imprisonment as provided in 8 U.S.C. $
1001 and civil violations of the False Claims Act.

28

26.     In the NTIA Grant application documents, CVIN represented that it was in a "public-private partnership" with CENIC[1]  In the NTIA Grant application, it represented: "CVIN/CENIC will build a 1,371 mile fiber-optics infrastructure through 18 California counties" and that "in a public-private partnership, Central Valley Independent Network, LLC (CVIN) and the Corporation for Educational Network Initiatives in California (CENIC) will build, operate and maintain a 1,371 middle mile fiber-optics network…" and that "the CVIN/CENIC proposal to provide over 1,371 miles of robust fiber network infrastructure within 18 Central Valley counties is critical if we are to ensure the network infrastructure needed for tomorrow…"

27.     The NTIA Grant application represented that CVIN and CENIC had not only entered into a Memorandum of Understanding, but that there was a "partnership."  In letters sent by CVIN to various institutions, CVIN represented that CVIN and CENIC had submitted an application for ARRA funds.  In fact, the NTIA Grant application funds contained CENIC's financial statements ostensibly for the purpose of showing that the applicants had the experience and capital to complete the project.

28.     The NTIA Grant application further indicated that "…formed in 1995, Central Valley Independent Network (CVIN) LLC has 8 rural independent telco-company members:  Sebastian, Ponderosa, Sierra, Calaveras, Volcano, Ducor, Cal-Ore, and Siskiyou."  CVIN produced an organizational chart showing said entities on the Board of Governors and financial reports showing the equity interest of these members.

29.     On its NTIA Grant application, CVIN estimated the total project cost at $66,599,667.  At the outset of the project, seventy percent of the CVNGBIP project's total funding was to come from the NTIA Grant ($46,619,757), ten percent from the PUC Grant ($6,659,967), and the remaining twenty percent ($13,319,934) was to come from "in kind" contributions from CVIN and its members.  However, CVIN's 2010 NTIA Grant

_____

[1] Plaintiff denies that CENIC is a public entity or agency.

1   application shows CVIN's total net assets as of 2009 were merely $1,300,000.  This is less

2   than ten percent of the amount needed by CVIN to cover its proposed liabilities for the

3   CVNGBIP project.

4        30.     On information and belief, the services provided to Anchor Institutions will

5   be managed by CENIC while CVIN will manage all commercial services to third party

6   providers, business and residential customers.

7        31.     On information and belief, CVIN's members plan to service some or all of

8   the broadband service contracts entered into by CVIN.  On information and belief,

9   wholesale and last mile providers who have entered service agreements with CVIN as of

10  November 15, 2013 include Sebastian Enterprises, Inc. dba Audeamus, Sierra Tel

11  Communications Group, and The Ponderosa Telephone Company.

12       32.     On information and belief, the majority of the fiber conduits have been, and

13  continue to be, constructed on public right-of-ways or Public Utility Easements ("PUEs")

14  through the use of city or county permits.  The CVNGBIP project also spans certain

15  portions of land owned by the federal government and by the California State Parks.  The

16  CVNGBIP project also crosses over private land and many privately owned parcels receive

17  the benefit of the project.

18       33.     Construction of the CVNGBIP project was broken down and bidded and/or

19  negotiated by CVIN in 30 segments.  On information, CVIN is nearing completion of the

20  entire 1,371 mile fiber-optics infrastructure system.

21       34.     On or about November 18, 2011, MP Nexlevel was awarded a bid to work as

22  one of CVIN's direct contractors on the CVNGBIP project.  MP Nexlevel thereafter

23  entered into a contract to provide plowing, trenching and boring labor, services, equipment

24  and/or materials, to be used in the construction of the a portion of the CVNGBIP project

25  known as "Segment 15."

26       35.     Between November 18, 2011 and the present, MP Nexlevel entered into a

27  total of fourteen contracts with CVIN to provide plowing, trenching and boring-related

28

Case No.
COMPLAINT FOR DAMAGES

1  labor, services, equipment and/or materials on the CVNGBIP segments commonly referred

2  to as Segments 8, 10, 12, 13, 14, 15, 18, 19, 21, 22, 25, 26, 27 and 30 (hereinafter, the

3  "Contracts").  A Schedule of Contracts is attached herein as **Exhibit A**.[2]

4      36.    At or about the time that the CVIN awarded the contracts to MP Nexlevel,

5  CVIN assured MP Nexlevel both orally and in writing that CVIN would promptly pay all

6  progress payments and promptly approve and pay all change order requests.

7      37.    In the bidding instructions incorporated into each of the Contracts, CVIN

8  represented, among other things, that:

9      a)    If by other provisions of the contract documents the Owner shall have

10         undertaken to furnish any materials for the construction of the Project (see

11         Specification Section 25 - CVIN LLC Supplied Materials), such materials

12         are on hand at locations which may be determined by inquiry by Contractor

13         from the Owner or if such materials are not on hand they will be made

14         available by the Owner to the Contractor before the time such materials are

15         required for construction.

16      b)    That all items to be accomplished by the Owner to facilitate

17         construction have been accomplished or will be completed prior to

18         construction activity.

19      c)    Staking plans are complete for the entire Segment.

20      d)    The Owner has obtained permission from State and local highway and

21         road authorities to bury cable and set housings on the highway and road

22         rights-of-way in the Project Area.

23      e)    The Owner will have available all funds necessary for immediate

24         payment for the construction of the Project.

---

27  [2]  Together the fourteen individual contracts consist of approximately 2,000 pages of documents.  In the interest of expediency, and in lieu of attaching each of the segment contracts to its Complaint, Plaintiff has elected to provide a Schedule of Contracts at this time, and provide defendants with electronic copies of the segment contracts in the course of discovery.

1              f)      The Owner will reimburse the Contractor for permit fees and

2                      Performance Bond fees paid by the Contractor.

3        38.     On information and belief, at or about the time that the CVIN awarded the

4   Contracts to MP Nexlevel, CVIN knew that it was insufficiently capitalized to complete

5   the project as a whole and, furthermore, it rushed through the process of applying for

6   NTIA Grant without sufficient inquiry to ensure that its projected CVNGBIP cost

7   calculations and engineering studies were accurate and/or had a basis in fact. CVIN's

8   insufficient capital and rushing through the NTIA grant application process was

9   intentionally concealed from MP Nexlevel in order to induce MP Nexlevel into entering

10  into contracts with CVIN. In fact, it was only after the payment problems began did

11  Plaintiff discover that, according to CVIN's 2010 filings with the federal government,

12  CVIN's net assets were only $1,300,000 as of 2009 yet it undertook a project with a cost

13  of over $67,000,000.

14       39.     On information and belief, as a consequence of rushing through the design

15  and engineering process to obtain NTIA Grant funding, the design and engineering of the

16  project was incomplete, inadequate and materially deficient. These deficiencies

17  foreseeably lead to project delays, impacts, and cost overruns. As a result of these actions

18  by CVIN, MP Nexlevel has suffered consequential damages as hereinafter alleged.

19  Ironically, CVIN blames MP for delays on the project that are directly attributable to

20  CVIN's plans, specifications, and/or failures to obtain necessary public approvals. In fact,

21  in February 2014, CVIN wrongfully terminated MP from Segment 27 by fabricating issues

22  of "material breach."

23       40.     At CVIN's direction, MP Nexlevel commenced work on the CVNGBIP

24  project segments and MP Nexlevel diligently performed that work. However, the actual

25  method of installation in the field and related quantities materially differed than what was

26  depicted on the project staking plans in all segments worked on by Plaintiff. These

27  discrepancies, together with CVIN's mismanagement of the project, interfered with MP

28

MP18-0000003
10026517.1                                   9

Case No.
COMPLAINT FOR DAMAGES

1  Nexlevel's timely completion of the CVNGBIP project segments.  These design errors and

2  mismanagement included, but are not limited to, the following:

3      a)    Incomplete and inaccurate survey of existing utilities as shown in

4      construction staking plans;

5      b)    Incomplete disclosure of local agency requirements that were not

6      available or made known to Plaintiff at the time of signing the Contracts;

7      c)    Failure to conduct and/or provide to Plaintiff an appropriate

8      geological investigation into the various segments which caused delays,

9      sequencing problems and cost overruns;

10      d)    Incomplete design and design conflicts which were resolved only

11      through a time-consuming question and answer procedure with CVIN, its

12      engineers and various public agencies;

13      e)    Late or non-existent authorizations to perform extra work;

14      f)    Delay in providing corrected engineering plans and various other

15      design changes;

16      g)    Under some of the Contracts, using the submittal process for change-

17      in-plans ("CIPs") rather than a traditional contract change request; [3]

18      h)    At times, failing to appropriately coordinate the work with

19      governmental agencies to obtain approvals so as to timely complete the work

20      on the respective segments;

21      i)    Failing to make progress payments as required by the various

22      contracts;

23      j)    Under those contracts requiring formal CIP approval, failing to

24      approve in writing CIPs which were authorized by field representatives; and

25

26

27  _____

28    [3] Some segment contracts allow for CIP approval by construction managers.

1              k)      Ignoring and failing to respond to CIPs and requests for a status of

2      CIP approval.

3      41.     Between November 18, 2011 and the present, MP Nexlevel performed work

4      on the CVNGBIP project in the following counties: Nevada, El Dorado, Amador,

5      Calaveras, Tuolumne, Stanislaus, Merced, Madera, Kings, Tulare, and Kern.  However, as

6      a result of CVIN's mismanagement and rushed, inadequate and incomplete engineering,

7      the project suffered significant delays and MP Nexlevel suffered cost overruns and other

8      damages according to proof.

9      42.     In addition to impacting MP Nexlevel's timely completion of the project,

10     CVIN's failure to provide complete drawings, surveys and engineering studies caused MP

11     Nexlevel to incur additional expenses because the changes were not provided for in the

12     original scope of work.  When Plaintiff discovered differing field conditions that triggered

13     a CIP, in most cases Plaintiff would stop work and submit a CIP in the southern segments

14     of the projects.  However, when working on the northern segments, CVIN informed MP

15     Nexlevel that it could not stop work notwithstanding the fact that field conditions

16     materially varied from what was shown on the staking plans and there was no approved

17     CIP.

18     43.     For those segments requiring formal CIP approval, Plaintiff has submitted

19     over 300 CIPs to CVIN. The total cost of these CIPs is $7.5 million.  In requesting the

20     CIPs and directing work outside the original contracts be performed, CVIN impliedly, if

21     not explicitly, authorized the additional cost and time necessary to accomplish the

22     forthcoming CIP.  For each of the CIPs, it was typical for MP Nexlevel to request payment

23     for costs of the change in work and/or a time extension to allow for the change in work.  At

24     some point, CVIN refused to review or approve any CIPs despite the fact that site

25     conditions materially varied and Plaintiff incurred significant extra costs in completing the

26     work.  The average turn-around time for CVIN to respond to a CIP request was 18 days.

27     However, many of these CIPs and invoices are over one year old.  CVIN took in excess of

28

1   30 days to respond to 40 CIPs, and in 15 instances it took over 100 days to respond to CIP

2   requests.

3       44.    Plaintiff submitted to CVIN other costs incurred to complete the project

4   (*e.g.*, traffic control, depth adders, etc.) and CVIN has failed to pay those costs as well.

5       45.    CVIN agreed to pay Plaintiff an additional rock bore price unit adder for

6   having pipe installed by a certain date, and CVIN has failed to honor this agreement.

7       46.    Despite receiving the benefit of this additional work and expenses, CVIN

8   refuses to pay the CIPs and other invoices also refuses to authorize time extensions to MP

9   Nexlevel for this work.  The Contracts require CVIN to pay 95% of the contract price prior

10  to payment of retention but, despite the fact that MP Nexlevel completed all work under its

11  contracts except for two segments, CVIN wrongfully refuses to comply with the payment

12  terms of the contracts.

13      47.    In or about March or April of 2013, CVIN CEO David Nelson informed

14  Plaintiff that CVIN had no more money for the project and that they had already went to

15  the board to obtain additional funds.  In fact, in one conversation between Mr. Nelson and

16  an MP Nexlevel representative, Mr. Nelson stated that if he went back to the Board

17  requesting more money to complete the project he would be fired.  Randy Pierce, former

18  construction manager for CVIN, said David Nelson told him that he (Mr. Nelson) would

19  bring the project in under budget or under schedule according to his projected costs

20  irrespective of the actual construction costs.

21      48.    On January 15, 2014, Plaintiff served CVIN with a Notice Demanding

22  Security pursuant to California Civil Code section 8712 via overnight delivery service.

23  Attached as **Exhibit B** is a true and correct copy of such Notice Demanding Security.

24      49.    On January 16, 2014, CVIN's CEO, David Nelson, mailed via overnight

25  delivery a Notice of Intent to Terminate Contracts, Segments 19 and 27, to Plaintiff

26  ("Notice of Intent to Terminate").  At the time, Plaintiff was actively performing

27  construction work only on Segments 19 and 27.  Plaintiff met and conferred with CVIN ,

28

1 who proceeded with the contract terminations, though it could not identify any legitimate
2 instance of material breach.

3      50.    On January 8, 2014, Mike Aydt, CFO of MP Nexlevel requested via email
4 from Jan Dubiakova, CVO of CVIN, the names of its construction lenders for the purpose
5 of serving defendants herein with Preliminary Notice pursuant to California Civil Code
6 section 8200. Ms. Dubiakova responded that "CVIN doesn't have any construction loans."
7 However, on September 26, 2012, MP Nexlevel disclosed to the California Public Utilities
8 Commission that it had obtained construction loans for the project in a Motion for Issuance
9 of Expedited Decision to Avoid Cessation of Construction and Potential Failure of the
10 Central Valley Next Generation Broadband Infrastructure Project.

11      51.    Due to CVIN's wrongful withholding of monies owed to MP Nexlevel,
12 many of the subcontractors hired for the project by MP Nexlevel have filed stop payment
13 notices. One subcontractor recently filed a lawsuit against Plaintiff and Plaintiff is in
14 discussions with others in an attempt to forestall further litigation. Thus, as a result of
15 CVIN's failure to pay amounts required by the contract, MP Nexlevel will incur
16 substantial attorneys' fees and costs.

17      52.    CVIN submits quarterly statements to the NTIA, which are published online.
18 CVIN's latest statement for the third quarter of 2013, dated November 15, 2013 ("2013
19 Third Quarter Statement"), shows that the CVNGBIP project is substantially over budget
20 and behind schedule due to construction delays.

21      53.    MP Nexlevel currently carries an outstanding balance of over $18,142,505
22 owed by CVIN for the labor, services, equipment and/or materials provided by MP
23 Nexlevel on the CVNGBIP project. This figure excludes other damage Plaintiff has
24 incurred for extended general conditions, insurance, lost profits, extended overhead, and
25 loss of bonding capacity. However, the 2013 Third Quarter Statement shows the actual
26 projected budget for the CVNGBIP project is anywhere from three to ten times the original
27 budgeted amount for every single category of expense except for construction costs.

28

MP18-0000003
10026517.1

Case No.
COMPLAINT FOR DAMAGES

54.   The 2013 Third Quarter Statement shows the total cost of right-of-ways, land structures, and appraisals for the CVNGBIP project was projected by CVIN to be almost ten times the budgeted cost of $215,963.  Architectural and engineering fees are likewise projected to be about four times greater the original budgeted amount of $1,212,173. Administrative and legal expenses are projected at three times greater than the original budgeted cost of $227,000.  Project inspection fees are projected at four and a half times greater than the $730,319 budgeted cost.

55.   The projected actual cost of construction is listed by CVIN as $63,038,836 on its 2013 Third Quarter Statement.  On information and belief, that cost does not include the amounts owed by it to MP Nexlevel.

56.   The 2013 Third Quarter Statement shows that CVIN has exhausted its NTIA Grant funds.

57.   Plaintiff does not know the status of the PUC Grant funds but, if funds are available, Plaintiff has a legal and/or equitable interest in those Grant funds.

58.   Based on the application for ARRA funding, and on information and belief, CVIN is grossly undercapitalized in light of the contractual obligations entered into it for the work performed and currently being performed on the CVNGBIP project and is not able to fulfill its contractual obligations to MP Nexlevel.

59.   The CVIN Member Defendants are liable for the acts of defendant CVIN alleged in this Complaint as its alter ego.  Recognition of the privilege of separate existence would promote injustice because the CVIN Member Defendants in dominated and controlled defendant CVIN as alleged herein.

60.   The CVIN Member Defendants used defendant CVIN as a mere shell, instrumentality, or conduit for the construction of the CVNGBIP project of the CVIN Member Defendants.

61.   As set forth above, the CVIN Member Defendants organized and carried on the business of defendant CVIN without substantial capital or sufficient assets available to

1  meet prospective liabilities. The CVIN Member Defendants control all of the shares of

2  defendant CVIN and have failed to sufficiently capitalize CVIN at the risk of the business

3  of defendant CVIN. The capital of defendant CVIN is now, and at all times mentioned in

4  this Complaint, trifling compared with its business and risks of the CVNGBIP project. As

5  a result, defendant CVIN is without assets to meet its debts, including the obligations to

6  MP Nexlevel alleged in this Complaint.

7       62.    The CVIN Member Defendants used defendant CVIN to procure labor,

8  services, and equipment from MP Nexlevel in connection with the construction of the

9  CVNGBIP project, as set forth above, for the benefit of the CVIN Member Defendants.

10      63.    The CVIN Member Defendants contracted with MP Nexlevel with intent to

11  avoid performance by use of the corporate entity of defendant CVIN as a shield against

12  liability.

13                          **FIRST CAUSE OF ACTION**
                              **(Breach of Contract)**
14

15      64.    Plaintiff hereby incorporates by reference, as though fully set forth herein,

16  each and every preceding paragraph of this Complaint.

17      65.    Plaintiff entered into the Contracts with CVIN to construct the various

18  segments of the CVNGBIP project. The Contracts required, among other things, that

19  CVIN promptly pay MP Nexlevel's monthly progress payments. CVIN represented in the

20  Contracts that the staking plans were complete and that it had various approvals to

21  commence construction. Further, the Contract for Segment 27 had a termination procedure

22  in place in paragraph 6.3.

23      66.    CVIN breached each of the Contracts by failing to promptly pay MP

24  Nexlevel's payment applications, failing and refusing to consider CIPs – let alone pay MP

25  Nexlevel's CIPs – and by wrongfully terminating Plaintiff from Segment 27. Moreover,

26  the shear number of CIPs – well over 300 – is in itself a cardinal change to the contract

27  constituting breach. Defendants also breached the Contracts by not paying additional rock

28

MP18-0000003
10026517.1

                                                              Case No.
                                                              COMPLAINT FOR DAMAGES

                                    15

1  adder charges and by failing to pay for Plaintiff's other costs, including but not limited to

2  traffic control.

3      67.    CVIN was aware that MP Nexlevel's financial well-being was dependant

4  upon CVIN's timely payments of the amounts owed by CVIN to MP Nexlevel and that if it

5  did not timely pay MP Nexlevel the amounts owed under the contracts, that MP Nexlevel's

6  financial condition would be adversely affected.

7      68.    CVIN knew or reasonably should have known that its inadequate staking

8  plans, the failure to conduct or provide a geological report to Plaintiff, and

9  mismanagement of the Project would cause delays in productivity to MP Nexlevel and its

10  subcontractors.  CVIN knew or reasonably should have known that such delay in

11  productivity would cause adverse financial impacts to MP Nexlevel and its subcontractors.

12  CVIN also knew or reasonably should have known that MP Nexlevel's subcontractors

13  would seek to recover from MP Nexlevel for the losses sustained by the subcontractor

14  from these adverse financial impacts and delay to productivity.

15      69.    CVIN further knew or reasonably should have known that as a foreseeable

16  result of its failure to pay MP Nexlevel the amounts owed by CVIN to MP Nexlevel under

17  the Contracts, MP Nexlevel's subcontractors would initiate legal actions against MP

18  Nexlevel and MP Nexlevel's bonding company.  CVIN knew or reasonably should have

19  known that if the subcontractors initiated legal action against MP Nexlevel, MP Nexlevel

20  would be required to not only to defend itself against these lawsuits, but it would also be

21  required to defend the bonding company and in so doing would incur substantial attorneys'

22  fees and costs.

23      70.    As a further proximate and foreseeable result of CVIN's breach of the

24  contracts, MP Nexlevel incurred additional consequential damages including but not

25  limited to the following:  (a) losses from CVIN's design errors and mismanagement which

26  resulted in massive delays and impacts on productivity and adverse financial impacts (*e.g.*

27  extended overhead, general conditions, job expenses and insurance premiums) to MP

28

1  Nexlevel and claimed by the subcontractors; (b) costs of defending against the claims and

2  legal actions initiated by the subcontractors all Project against MP Nexlevel and its

3  bonding company; (c) lost profits; and, (d) lost bonding capacity.

4      71.    MP Nexlevel prays for judgment as set forth below.

5                        **SECOND CAUSE OF ACTION**
       **(Breach Of The Implied Covenant Of Good Faith And Fair Dealing)**
6

7      72.    Plaintiff hereby incorporates by reference, as though fully set forth herein,

8  each and every preceding paragraph of this Complaint.

9      73.    Implied in every contract is a covenant of good faith and fair dealing

10 requiring each party to exercise its best efforts to perform and to not hinder the other

11 party's performance or deny the other party the benefits under the contract.

12     74.    MP Nexlevel fully or substantially performed pursuant to the terms of the

13 Contracts for the various segments.  For those items that MP Nexlevel may not have fully

14 performed MP Nexlevel was excused from performing.

15     75.    MP Nexlevel completed all conditions precedent for CVIN's performance

16 pursuant to the Contracts.

17     76.    As set forth more fully above, CVIN unfairly interfered with MP Nexlevel's

18 right to receive the benefits of the respective Contracts, and has forced MP Nexlevel to

19 defend against claims of the subcontractors on the project.

20     77.    Further, even though most of the segments on the project have been

21 substantially completed for many months, CVIN wrongfully refuses to provide progress

22 payments and otherwise approve authorized CIP requests.  CVIN often refuses to

23 recognize MP Nexlevel's payment submissions for weeks, if not months at a time in

24 violation of the Contracts.

25     78.    As the project continued, CVIN's filings with NTIA Grant revealed that it

26 was millions of dollars over budget on the project.  In fact, by the end of the first quarter of

27

28

MP18-0000003
10026517.1

17

Case No.
COMPLAINT FOR DAMAGES

1 | 2013, the entire project was only 81% complete, and CVIN's NTIA Grant filings show that

2 | all grant and matching funds were spent.

3 |       79.    CVIN's NTIA Grant filings from August 2013 show the project was a

4 | projected to be completed at a whopping $7,000,000 over budget.  As 2013 came to an

5 | end, it because clear to CVIN that it needed additional funds to complete the project.  What

6 | was once a very cooperative relationship turned sour when CVIN concocted a scheme to

7 | use the CIP process as a weapon to delay and obstruct payments.  CVIN initially hid its

8 | funding problems from MP Nexlevel and its other contractors but then verbally disclosed it

9 | had financial difficulties when CVIN ceased paying MP Nexlevel for approved work.

10 |       80.    CVIN unfairly interfered with MP Nexlevel's right to receive the benefits of

11 | the contract thereby breaching the implied covenant of good faith and fair dealing

12 | contained in each and every one of the Contracts.

13 |       81.    As a proximate and foreseeable result of CVIN's breach of the implied

14 | covenant of good faith and fair dealing, MP Nexlevel has sustained general, special and/or

15 | consequential damages as pled above in an amount.

16 |       82.    MP Nexlevel prays for judgment as set forth below.

17 | **THIRD CAUSE OF ACTION**
**(Breach Of Express Warranty Of Plans And Specifications)**

18 |

19 |       83.    Plaintiff hereby incorporates by reference, as though fully set forth herein,

20 | each and every preceding paragraph of this Complaint.

21 |       84.    In the Contracts, CVIN expressly stated, among other things:

22 |

23 |     b)    That all items to be accomplished by the Owner to facilitate construction have been accomplished or will be completed prior to construction activity.

24 |

25 |     c)    Staking plans are complete for the entire Segment.

26 |     d)    The Owner has obtained permission from State and local highway and road authorities to bury cable and set housings on the highway and road rights-of-way in the Project

27 | Area.

28 |

85.     As set forth more fully above, these representations were false.  CVIN had not completed the plans to the extent that the segments were construction ready. Moreover, either CVIN did not commission a geological survey or did not provide one to Plaintiff prior to executing the Contracts.  Had a geological survey been disclosed prior to signing the Contracts it would have materially affected the scope and price provided by Plaintiff.  Ironically, CVIN wants to assess liquidated damages against MP for delays that stem not from MP's work, but CVIN's incomplete and inaccurate plans and specifications.

86.     As the proximate result of CVIN's breach of the express warranty about the project plans and construction readiness, MP Nexlevel has suffered damages in an amount in excess of the minimum jurisdiction of this Court.

87.     MP Nexlevel prays for judgment as set forth below.

### FOURTH CAUSE OF ACTION
**(Breach Of Implied Warranty Of Plans And Specifications)**

88.     Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every preceding paragraph of this Complaint.

89.     Under California law, by publishing the construction plans and inviting contractors to submit competitive bid proposals in response to them, CVIN represented and otherwise impliedly warranted, that they were accurate, complete, coordinated, and suitable for construction of the project and that MP Nexlevel or any other contractor and their subcontractors, would be fully able to construct the project in accordance with the Contract documents.

90.     At the time that CVIN published the Contract documents for bidding, it knew or had reason to know that the documents were inaccurate, incomplete, uncoordinated, and not suitable for construction of the project.

91.     CVIN knew or had reason to know that MP Nexlevel relied on CVIN's implied warranty that the Contract documents were accurate, complete, coordinated, and

MP18-0000003
10026517.1

19

Case No.
COMPLAINT FOR DAMAGES

1 | suitable for construction of the Project and that MP Nexlevel intended to rely on the

2 | documents to provide an accurate and complete bid for the project.

3 |      92.    As set forth more fully above, the Contract documents were not suitable for

4 | the intended purpose of enabling MP Nexlevel to fully construct the project.

5 |      93.    As the proximate result of CVIN's breach of the implied warranty of the

6 | Construction Documents, MP Nexlevel has suffered damages in an amount excess of the

7 | minimum jurisdiction of this Court.

8 |      94.    MP Nexlevel prays for judgment as set forth below.

9 | **FIFTH CAUSE OF ACTION**
**(Violation Of Civil Code Section 8800 For Failure To Pay Progress Payments)**

10 |

11 |      95.    Plaintiff hereby incorporates by reference, as though fully set forth herein,

12 | each and every preceding paragraph of this Complaint.

13 |      96.    The Contracts required CVIN to make progress payments of 95% of each

14 | invoice within 25 days of each month for completed bid units.

15 |      97.    CVIN failed to pay MP Nexlevel for the completed bid units as required by

16 | the contract. CVIN not only breached the contract, but it is in violation of California Civil

17 | Code section 8800 for failure to pay progress payments when due.

18 |      98.    There is no good faith dispute for the withholding of all the funds currently

19 | being withheld. MP Nexlevel contends many of the "disputes" were asserted in bad faith

20 | for the purpose of delaying or denying payment rightfully due to MP Nexlevel under the

21 | Contracts.

22 |      99.    MP seeks accumulated interest and attorneys' fees in accordance with

23 | California Civil Code section 8800 for CVIN's failure to prompt make progress payments.

24 | **SIXTH CAUSE OF ACTION**
**(Foreclosure of Mechanics Lien Against DOES 51-500 Only)**

25 |

26 |      100.    Plaintiff hereby incorporates by reference, as though fully set forth herein,

27 | each and every preceding paragraph of this Complaint.

28 |

1       101.   As set forth above, MP Nexlevel and CVIN entered into the Contracts for the

2  construction of the CVNGBIP project.  In accordance with those contracts, MP Nexlevel

3  agreed to furnish certain labor, services, equipment, and materials for the construction of

4  the CVNGBIP project.

5       102.   On information and belief CVIN and/or CENIC hold private possessory

6  interests in all CVNGBIP project land.

7       103.   From on or about January 2012 until the present, pursuant to the Contracts

8  and at CVIN's special request, MP Nexlevel furnished labor, services, equipment, and

9  materials used and intended to be used in the work of improvement, including extra work,

10  as set forth in greater detail in the preceding paragraphs above.

11       104.   The labor, services, equipment, and materials furnished by MP Nexlevel had

12  and have a reasonable value of $35,842,462, less that what has been paid to date.

13       105.   MP Nexlevel is a direct contractor under CVIN, the reputed "owner" of the

14  CVNGBIP project.  As MP Nexlevel was informed by CVIN that there are no construction

15  lenders, MP Nexlevel had no obligation under the Civil Code to serve a 20 Day

16  Preliminary Notice pursuant to Civil Code section 8200, *et seq*.  However, out of an

17  abundance of caution, MP Nexlevel served on all defendants named herein a 20 Day

18  Preliminary Notice.

19       106.   MP Nexlevel has substantially completed performance under all the

20  Contracts[4] and/or the contracts have been terminated.  Under California Civil Code section

21  8412, MP Nexlevel's lien rights are now ripe.  Plaintiff will duly record a verified

22  Mechanics' Lien Claim, describing the private interest owned on each parcel and the labor,

23  services, equipment, and/or materials to be furnished on the work of improvement in the

24  official county records and in accordance with the provisions of Civil Code section 8416

25

26

27

28

---

[4] MP Nexlevel is still performing work on minor restoration and punch list items.

1   against the Doe defendants once MP Nexlevel can ascertain the identities of those

2   defendants.

3        107.   Each defendant claims some right, title, or interest in or to the parcel, each of

4   which claim is junior and inferior to plaintiff's claim.

5        108.   Accordingly, MP Nexlevel prays for judgment as set forth below.

6                         **SEVENTH CAUSE OF ACTION**
                              **(Quantum Meruit)**
7

8        109.   Plaintiff hereby incorporates by reference, as though fully set forth herein,

9   each and every preceding paragraph of this Complaint.

10       110.   Within the last two years MP Nexlevel rendered services and materials to

11  CVIN at the special request of CVIN for which CVIN promised to pay MP Nexlevel for

12  the said services.

13       111.   At all times herein mentioned, the above services were and are of the

14  contract price and on information and belief of the reasonable value of $35,842,462[5] less

15  what has been paid to date.

16       112.   All sums due have not yet been paid notwithstanding MP Nexlevel's demand

17  for payment, and there is now due, owing and unpaid from CVIN to MP Nexlevel the sum

18  of $18,142,505 plus interest thereon.

19                          **EIGHTH CAUSE OF ACTION**
                               **(Injunctive Relief)**
20

21       113.   Plaintiff hereby incorporates by reference, as though fully set forth herein,

22  each and every preceding paragraph of this Complaint.

23       114.   Section 4.2(a) of each of the Contracts provides in pertinent part: "Upon

24  written request of the Owner, the Contractor shall deliver to the Owner full possession and

25  control of any portion of the Project, **provided** the Contractor **shall** have been paid at least

26

27  _____

28       [5]  or at a reasonable value amount to be determined at trial.

1  ninety-five percent (95%) of the cost of the construction of such portion." (Emphasis
2  added.)

3      115.    CVIN has not paid Plaintiff ninety-five percent (95%) of the cost of
4  construction under any of the Contracts, nor has it submitted a written request that Plaintiff
5  deliver to it full possession and control of the Project.   Nonetheless, CVIN has taken
6  possession of the project in violation of Plaintiff's rights under each of the Contracts.

7      116.    By reason of CVIN's actions, MP Nexlevel has suffered and will continue to
8  suffer hardship and actual and impending irreparable injury and/or damage in that Plaintiff
9  is unable to exchange the bargained-for benefit of possession of the project for monies
10  owed under the contract.  MP Nexlevel is also unable prevent unjust enrichment and other
11  inequitable use of the project land for the continued benefit of CVIN.

12      117.    MP Nexlevel has no adequate or speedy remedy at law for the above-
13  mentioned conduct of CVIN for the reason that the extraordinary sum owed to MP
14  Nexlevel, over $16 million, is jeopardizing the viability of MP Nexlevel's business.
15  Additionally, due to CVIN's refusal to pay monies owed to MP Nexlevel under the various
16  contracts, MP Nexlevel's subcontractors have issued stop payment notices and one has
17  commenced an action against MP Nexlevel, causing Plaintiff to sustain further damage as
18  a result of CVIN's actions.  A speedy remedy at law is essential under the circumstances
19  and this action for injunctive relief is Plaintiff's only reasonable and expedient means for
20  securing relief.

21      118.    Wherefore, MP Nexlevel requests that this court issue a temporary
22  restraining order and a preliminary injunction pursuant to Federal Rule of Civil Procedure
23  Rule 65 ordering CVIN, and all those in active concert or participation with it to refrain
24  immediately and pending the final hearing and determination of this action from retaining
25  possession of those areas of the project constructed by Plaintiff until such time as it has
26  paid at least ninety-five percent (95%) of the cost of the construction work performed by
27  Plaintiff.  Plaintiff additionally prays for any further relief as this Court deems proper.

28

1

## NINTH CAUSE OF ACTION
### (Violation of California Civil Code section 8710)

2

3          119.    Plaintiff hereby incorporates by reference, as though fully set forth herein,

4    each and every preceding paragraph of this Complaint.

5          120.    On information and belief, CVIN is the private owner of less than a fee-

6    simple interest in all CVNGBIP project property (*e.g.*, a permit or leasehold interest).

7    Additionally, nine of the segment contracts had contract prices exceeding one million

8    dollars.  As such, California Civil Code section 8710, requires CVIN to post security for

9    CVIN's payment obligation to Plaintiff under the CVNGBIP project.

10         121.    On January 15, 2014, Plaintiff served CVIN with a Notice Demanding

11   Security under California Civil Code section 8712. *See* **Exhibit B.**

12         122.    Shortly thereafter, CVIN terminated MP Nexlevel from the last two

13   remaining segments upon which Plaintiff was performing work, Segments 19 and 27,

14   thereby denying Plaintiff the statutory "hammer" of its right to suspend work.

15         123.    On information and belief, CVIN has at all relevant times failed to maintain

16   and provide security for the CVNGBIP project.

17         124.    As set forth above, CVIN has defaulted on its contractual payment

18   obligations to Plaintiff.

19         125.    Under California Civil Code section 8710(a), Plaintiff is entitled to seek

20   payment from CVIN's retained security source.

21         126.    Plaintiff prays for judgment as set forth below, and for any other relief this

22   Court deems as proper.

23

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

24

25         127.    Plaintiff hereby incorporates by reference, as though fully set forth herein,

26   each and every preceding paragraph of this Complaint.

27

28

128.   As set forth above, CVIN failed to provide complete drawings, surveys and engineering studies.  The difference in the field conditions from what was represented in the Construction Documents required MP Nexlevel to submit numerous CIP requests.  However, CVIN systematically failed to respond to MP Nexlevel's CIP requests despite the fact that CVIN field representatives requested the work.  With few exceptions, Plaintiff would stop work and submit a CIP request.  CVIN informed MP Nexlevel that under each of its Contracts, it could not stop work notwithstanding the fact that field conditions materially varied from what was shown on the staking plans and there was no approved CIP.  This caused MP Nexlevel to incur additional expenses because the changes were not provided for in the original scope of work.

129.   MP Nexlevel has submitted over $7.5 million in CIPs, initially requested CVIN field representatives, and now the validity of which CVIN refuses to acknowledge, despite having received the benefit of such CIP construction work.

130.   Plaintiff also submitted to CVIN other costs incurred to complete the project (*e.g.,* traffic control, depth adders) of which CVIN has availed the benefit and yet has failed to pay said costs.

131.   CVIN, which is in possession and control of the project, is now able to complete the final stages of the CVNGBIP project because it has availed itself of the benefit of Plaintiff's uncompensated work.

132.   CVIN has been unjustly enriched and CVIN's retention of the benefit conferred by Plaintiffs would be inequitable without payment for the benefit's value.

133.   Plaintiff prays for relief in the amount of the value of any uncompensated benefits conferred upon CVIN and other relief as this Court deems proper.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment in its favor and against Defendants, and each of them, as follows:

Case No.
COMPLAINT FOR DAMAGES

1.  For the principal amount of $18,142,505 remaining under the Contracts and CIPs;

2.  For consequential damages caused by CVIN's delays;

3.  For contractual and/or prejudgment interest;

4.  For costs of suit herein incurred;

5.  For contractual and/or statutory attorneys' fees and costs, as allowed by law;

6.  For payment of penalties as provided by law; and

7.  For such other relief as the court may deem just and proper.

Dated: February 28, 2014

HAIGHT BROWN & BONESTEEL LLP
Three Embarcadero Center, Suite 200
San Francisco, California 94111

By: _____
Steven M. Cvitanovic
Jessica M. Lassere
Attorneys for Plaintiff
MP NEXLEVEL OF CALIFORNIA, INC.

**EXHIBIT A**

*MP NEXLEVEL OF CALIFORNIA, INC. V. CVIN, LLC, et al.*

## EXHIBIT A - SCHEDULE OF CONTRACTS

| | | |
|---|---|---|
| Segment 8 | 1/23/2012 | Stanislaus County |
| Segment 10 | 11/18/2011 | Madera County |
| Segment 12 | 11/18/2011 | Kings County<br>Tulare County |
| Segment 13 | 11/18/2011 | Tulare County |
| Segment 14 | 1/3/2012 | Tulare County |
| Segment 15 | 11/18/2011 | Kings County |
| Segment 18 | 11/18/2011 | Stanislaus County |
| Segment 19 | 5/3/2012 | Tuolumne County<br>Calaveras County |
| Segment 21 | 10/9/2012 | El Dorado County<br>Amador County |
| Segment 22 | 3/23/2012 | Kern County<br>Tulare County |
| Segment 25 | 12/18/2012<br>(date of rebid) | Placer County<br>El Dorado County |
| Segment 26 | 12/18/2012<br>(date of rebid) | Amador County<br>El Dorado County |
| Segment 27 | 12/18/2012<br>(date of rebid) | Nevada County |
| Segment 30 | 11/18/2011 | Tulare County |

**EXHIBIT B**

## NOTICE DEMANDING SECURITY
### (Cal. Civ. Code § 8712)

**To: The Central Valley Independent Network, LLC ("CVIN"),** 9479 North Fort Washington, Suite 105, Fresno, California 93730

**This is to notify you that the undersigned MP Nexlevel of California, Inc. ("MP Nexlevel"), located at 500 County Road 37 East, Maple Lake, Minnesota 55358, hereby provides CVIN with the foregoing Notice Demanding Security pursuant to California Civil Code section 8700,** *et seq.* **in relation to the project commonly referred to as the Central Valley Next Generation Broadband Infrastructure Project ("CVNGBIP").**

CVIN is required to provide security by way of bond, irrevocable letter of credit, or escrow, as further elaborated in California Civil Code section 8720, to MP Nexlevel **no later than TEN DAYS from the date of this notice.**

CVNGBIP is a large-scope infrastructure project to bring broadband internet services to underserviced areas of California's Central Valley for certain real properties located in eighteen counties in the State of California. A map of the project locations is attached hereto as **Exhibit A.** MP Nexlevel furnished to CVIN labor, services, equipment and/or materials to be used and actually used in the construction of broadband conduits in relation to CVNGBIP.

The names and addresses of the owner or reputed owner of the real properties is CVIN, 9479 North Fort Washington, Suite 105, Fresno, California 93730. The properties are described in further detail in **Exhibit A,** attached hereto. Work is currently being performed on Segments 19 and 27, more particularly described in **Exhibit B.**

The undersigned MP Nexlevel of California, Inc., located at 500 County Road 37 East, Maple Lake, Minnesota 55358, acted as a direct contractor for CVIN. CENIC acted and continues to act as CVIN's partner on the CVNGBIP.

The name and address of the known/reputed construction lenders are as follows:

1. The National Telecommunications and Information Association ("NTIA"), 1401 Constitution Ave., NW Washington, DC 20230

2. Calaveras Communications Company, P.O. Box 37, Copperopolis, California 95228

3. Sebastian Enterprises, Inc., 811 South Madera Avenue, Kerman, California 93630

4. Volcano Communications Company, P.O. Box 1070, Pine Grove, California 95665

5. Stageline Communications, Inc., P.O. Box 21, O'Neals, California 93645

6. The Ponderosa Telephone Company, P.O. Box 21, O'Neals, California 93645

7. Sierra Tel Communications Group, P.O. Box 219, Oakhurst, California 93644

8. Varnet, Inc., P.O. Box 42230, Bakersfield, California 93384

9. Ducor Telephone Company, P.O. Box 42230, Bakersfield, California 93384

10. Cal-Ore Telephone Co., 719 West 3rd Street, Dorris, California 96023

11. The Siskiyou Telephone Company, P.O. Box 157, Etna, California 96027

**NOTICE IS HEREBY GIVEN THAT, IF THE UNDERSIGNED IS NOT PROVIDED WITH SECURITY WITHIN 10 DAYS AFTER THIS NOTICE, THE UNDERSIGNED CONTRACTOR HAS THE STATUTORY RIGHT TO SUSPEND WORK ON CVNGBIP.**

Dated: January ___15___, 2014

By: _____
                              Michael Aydt
CFO, MP Nexlevel of California, Inc.

Executed in: __Maple Lake, MN__

## PROOF OF SERVICE BY OVERNIGHT MAIL DECLARATION

I declare that I served a copy of the above Notice Demanding Security, by (as required by California Civil Code section 8110) Federal Express overnight delivery service postage prepaid, addressed to The Central Valley Independent Network, LLC at 9479 North Fort Washington, Suite 105, Fresno, California 93730, on January ___15___, 2014. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January ___15___, 2014

By: _____
                Ollye Robinson, Legal Assistant
                Haight Brown & Bonesteel LLP
                Executed in San Francisco, California

**EXHIBIT A**



# CVIN-CENIC
# PROJECT OVERVIEW























**EXHIBIT B**



