# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MP NEXLEVEL OF CALIFORNIA, INC.,** | 1:14-cv-288-LJO-GSA |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS (DOCS. 56, 57, 61)** |
| **CVIN, LLC, et al.,** | |
| Defendants. | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

1

visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. INTRODUCTION

This case concerns disputes that arose over a large-scale broadband infrastructure construction project ("the Project") throughout California's Central Valley. *See* Plaintiff's First Amended Complaint ("the FAC"), Doc. 44 ¶ 1.[1] The goal of the Project is to create an approximately 1,371-mile broadband fiber network through 18 Central Valley counties. *Id.* ¶ 22.

Plaintiff MP Nexlevel ("MP") entered into numerous contracts to participate in the construction of the Project. *Id.* ¶¶ 1, 4. Because of various ongoing disputes that arose during the construction of the Project, MP brought this suit against Defendant CVIN, LLC ("CVIN")[2] d/b/a Vast Networks, and Defendant Corporation for Education Network Initiatives in California ("CENIC").

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6). Docs. 56, 57, 61. Pursuant to Local Rule 230(g), the Court rules on the papers without oral argument. For the reasons discussed below, the Court GRANTS Defendants' motions.

## III. BACKGROUND

MP alleges that, based on their representations, CVIN and Defendant CENIC were in a partnership and would jointly build and operate the project. *Id.* ¶ 55. MP alleges it submitted bids to work on the Project as a direct contractor for CVIN based, in part, on its belief that CVIN and CENIC were in a partnership. *Id.* ¶ 55-56.

Since November 18, 2011, MP has entered into fourteen contracts with CVIN to provide construction-related services on the Project ("the contracts"). *Id.* ¶ 58. The Project is divided into 30

---

[1] The background facts are derived from the FAC. The Court accepts the factual allegations as true for purposes of this motion. *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

[2] MP claims CVIN is composed of, among others, ten separate telecommunications companies: Calaveras Communications Company; Sebastian Enterprises, Inc.; Volcano Communications Company; Stageline Communications, Inc.; The Ponderosa Telephone Company; Sierra Tel Communications Group; Varnet, Inc.; Cal-Ore Telephone Company; Ducor Telephone Company; and Consolidated Communications Holdings, Inc. (collectively, "the Member Defendants"). FAC ¶ 10. MP asserts its claims against CVIN and the Member Defendants on the ground the Member Defendants are CVIN's alter egos. *Id.*

"Segments," and MP contracted with CVIN to provide its services on Segments 8, 10, 12, 13, 14, 15, 18, 19, 21, 22, 25, 26, 27, and 30. *Id.* ¶¶ 53, 58. Separate contracts govern the parties' obligations as to the construction of each Segment. *Id.* ¶ 18.

As with many construction projects, things have not gone as planned, and disputes have arisen between the parties. MP claims that "[a]s a result of CVIN's mismanagement and rushed, inadequate and incomplete engineering, the Project suffered significant delays and [MP] suffered cost overruns and other damages." *Id.* ¶ 77.

MP asserts that "CVIN wrongfully blames [MP] for delays on the Project that are directly attributable to CVIN's failures, including without limitation, provision of defective plans and specifications, and failures to timely provide materials or to obtain necessary permits or approvals." *Id.* ¶ 70. And MP claims that "[d]espite the fact that [MP] completed or is in the process of completing all work under the Contracts except for two segments . . . CVIN wrongfully refuses to comply with the payment terms of the Contract." *Id.* ¶ 91. Further, MP claims CVIN wrongfully terminated it from the two Segments on which it has not completed work (Segments 19 and 27). *Id.* ¶ 91, n. 3.

MP asserts that "CVIN is grossly undercapitalized . . . and is not able to fulfill its contractual obligations to [MP]." *Id.* ¶ 114. Specifically, MP alleges CVIN has not paid it money it is owed under the contracts. *Id.* ¶ 102. And because MP has not been paid, MP alleges it faces legal action from its subcontractors due to its inability to pay them. *Id.* ¶¶ 102-03.

MP alleges the Member Defendants are liable for CVIN's conduct because they "used CVIN as a mere shell, instrumentality, or conduit for the construction of the Project by the CVIN Member Defendants." *Id.* ¶ 116. That is, MP asserts that the Member Defendants are alter egos for CVIN. *Id.* ¶¶ 115-17.

MP asserts sixty causes of action against Defendants.[3] Claims one through fourteen are for breach of each of the fourteen contracts MP entered into for the construction of the Project. *Id.* at 19 -35.

---

[3] MP's causes of action will be discussed in more detail below in conjunction with Defendants' motions to dismiss.

Claims fifteen through twenty-eight are for breach of an express warranty of plans and specifications that MP alleges was contained in each of the contracts. *Id.* at 35-42. Claims 29 through 42 are for violation of California Civil Code § 8800 ("§ 8800"). *Id.* at 43-53. Claims 43 through 54 are for violation of California Civil Code § 8812 ("§ 8812"). *Id.* at 54-63. These groups of claims contain fourteen individual causes of action, and each pertains to an individual Segment. MP asserts further individual claims for a foreclosure of a mechanics lien against CVIN, *id.* at 64-65; quantum meruit, *id.* at 65-66; injunctive relief, *id.* at 67-68; violation of California Civil Code § 8710 ("§ 8710"), *id.* at 68; unjust enrichment, *id.* at 69; and declaratory judgment, *id.* at 70.

## IV. **STANDARD OF DECISION**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

4

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## V. DISCUSSION

**A.    CVIN's Motion to Dismiss.**

CVIN moves to dismiss MP's "eighth cause of action for Violation of California Civil Code § 8700 and ninth cause of action for Unjust Enrichment." Doc. 56 at 2. CVIN claims neither states a cognizable legal theory under California law. *Id.*; *see also id.* at 3-4.

With regard to MP's "eighth cause of action," CVIN misreads the FAC. The Court construes CVIN's reference to MP's "eighth cause of action for Violation of California Civil Code § 8700" to apply to MP's 58th cause of action for violation of California Civil Code § 8710. *See* FAC at 2, 68. Although the FAC's caption erroneously states MP asserts a cause of action for violation of California Civil Code § 8700, *see id.* at 2, the FAC is abundantly clear that MP asserts a claim for violation of California Civil Code § 8710, not § 8700. *See id.* at 68 ("Violation of California Civil Code § 8710 – Against All Defendants"). Because CVIN moves to dismiss on the ground there is no cause of action for a violation of § 8700, CVIN has not addressed whether an alleged violation of § 8710 provides a viable cause of action. Accordingly, the Court DENIES CVIN's motion to dismiss MP's 58th cause of action.

CVIN argues that MP's claim for unjust enrichment fails as a matter of law because it is a "remedy of restitution, not a separate cause of action." Doc. 56 at 4 (emphasis omitted). As this Court has previously explained:

California courts are split as to whether unjust enrichment constitutes a stand-alone cause of action. Some courts have recognized such a claim. *See, e.g.*, *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593–94, 80 Cal.Rptr.3d 316 (Ct.App.2008); *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726–28, 91 Cal.Rptr.2d 881 (Ct.App.2000). Other courts have explicitly stated that "there is no cause of action in California for unjust enrichment." *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (Ct.App.2003). *See also Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1370, 108 Cal.Rptr.3d 682 (Ct.App.2010); *McBride v. Boughton*, 123 Cal.App.4th 379, 387, 20 Cal.Rptr.3d 115 (Ct.App.2004). These courts have explained that unjust enrichment "does not describe a theory of recovery," *Lauriedale Assoc. Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448, 9 Cal.Rptr.2d 774 (Ct.App.1992), but rather "a general principle" that underlies "various legal doctrines and remedies[.]" *Melchior*, 106 Cal.App.4th at 793, 131 Cal.Rptr.2d 347.

*Gerawan Farming, Inc. v. Rehrig Pacific Co.*, 2012 WL 691758, at * 11 (E.D. Cal. Mar. 2, 2012). Courts generally have recognized unjust enrichment as a stand-alone cause of action in "three traditional scenarios," *Monet v. Chase Home Fin., LLC*, No. C 10-0135 RS, 2010 WL 2486376, at *3 n.1 (N.D. Cal. June 16, 2010), which are as "an alternative to contractual damages, an action in quasi-contract, or restitution in equity." *Waldo v. Eli Lilly & Co.*, No. CIV S-13-0789 LKK/EFB, 2013 WL 5554623, at *10 (E.D. Cal. Oct. 8, 2013).

The parties do not dispute that they entered into multiple valid contracts. In fact, the entire FAC is essentially premised on CVIN's liability under the contracts. Nonetheless, MP argues that it may alternatively allege contract-based and quasi-contract-based theories of liability. *See* Doc. 73 at 20. But

> an implied or quasi-contract cannot be imposed, however, where there is already a valid, express contract defining the rights of the parties; the two are mutually exclusive. *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002); *Paracor*, 96 F.3d at 1167. Therefore, a claim for unjust enrichment or restitution cannot hinge upon the existence of a valid, express contract. *See, e.g., Gerlinger v. Amazon, Inc.*, 311 F.Supp.2d 838, 856–57 (N.D. Cal. 2004) (plaintiff cannot bring a claim for unjust enrichment while relying on the existence of a valid contract to establish standing).

*Gerawan*, 2012 WL 691758, at *11. Because MP indisputably asserts claims based on a valid, enforceable contract, it may not assert a claim for unjust enrichment. *See Paracor*, 96 F.3d at 1167 ("unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Berkla*, 302 F.3d at 918 ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time."). Accordingly, the Court GRANTS CVIN's motion to dismiss MP's claim for unjust enrichment

6

WITHOUT LEAVE TO AMEND.

B.     **CENIC'S Motion to Dismiss.**

CENIC moves to dismiss all of MP's causes of action against it on the ground none states a valid claim. *See* Doc. 57 at 2. CENIC claims that "[e]ach of [MP's] sixty causes of action . . . is grounded in the breach of contracts [MP] entered into with CVIN," *id.* at 16, and that CENIC is in no way liable to MP based on those contracts or otherwise. CENIC asserts that the FAC fails to allege the existence of any contract between CENIC and MP, *id.* at 10, and that the FAC fails to provide facts to support MP's allegation that CENIC is a partner of CVIN. *Id.* at 12. Thus, according to CENIC, because CENIC is not liable to MP either via a contract or as CVIN's partner, all of MP's claims against it fail.

CVIN received funding for the Project through grants, including one administered through the National Telecommunications and Information Administration ("the NTIA Grant"). MP alleges that CENIC was named as a "proposed sub-recipient" of the NTIA Grant. FAC ¶ 28. MP further alleges that "[i]n the NTIA Grant application documents, CVIN represented that it was in a 'public-private partnership' with CENIC." *Id.* ¶ 30. MP alleges that CVIN also represented in the NTIA Grant application that "CVIN/CENIC will build a 1,371 mile fiber-optics infrastructure through 18 California counties,'" and that "in a public-private partnership, [CVIN] and [CENIC] will build, operate and maintain a 1,371 middle mile fiber-optics network." *Id.* ¶ 31. The NTIA Grant application contained CENIC's financial statements. *Id.* ¶ 34.

CENIC stated on its website that it had received funding for the Project, which "was designed and developed by the private-public partnership of CVIN . . . and CENIC." *Id.* ¶ 35. Likewise, CVIN stated on its website that "CENIC . . . together with its private sector partner CVIN . . . have put together a project plan designed to improve the availability of broadband networking infrastructure for 18 counties." *Id.* ¶ 36.

MP alleges that

> CVIN's and CENIC's representations in the NTIA Grant application, websites, and elsewhere that they were in a partnership and intended to jointly build the Project were false and that the true nature of the relationship between CVIN and CENIC was intentionally concealed from MP

7

. . . to induce [MP] into entering into [the contracts] with CVIN." *Id.* ¶ 65. As a "purported partner of CVIN," MP alleges that it is "liable for CVIN's breaches of the Contracts . . . as CVIN's alter egos." *Id.* ¶ 156.

"[I]t is well-settled that the existence of a partnership is a question of fact" under California law. *Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.*, 965 F.Supp.2d 1141, 1150 (E.D. Cal. Aug. 15, 2013) (citing *Filippo Indus., Inc. v. Sun Ins. Co. of New York*, 74 Cal. App. 4th 1429, 1444 (1999)). "Whether or not the parties have entered into a partnership relationship generally depends on whether they intended to share in the profits, losses and the management and control of the enterprise." *Id.* (citations omitted). Thus, at this point in the litigation, the Court cannot make a factual finding as to whether CVIN and CENIC were (or continue to be) partners in constructing the Project.

But MP does not allege that it entered into any contract with CVIN. Implicit in MP's claim that CENIC is liable for CVIN's conduct on the ground CVIN contracted with MP is the assertion that CVIN had the authority to contractually bind CENIC. MP argues in a conclusory fashion that, because CVIN and CENIC are allegedly partners, CENIC is liable for CVIN's alleged breaches of the contracts. MP does not explain in any further detail how CENIC would be contractually liable to MP via MP's contracts with CVIN. Moreover, MP does not allege that CENIC breached any contract between MP and CENIC, and, therefore, MP does not allege that MP suffered any damages as a result of CENIC's breach of contract. The Court finds that MP has failed to state sufficient facts to support its claims that CENIC is liable to MP for CVIN's alleged breach of the contracts on the ground they were partners.

As against CENIC, all of MP's causes of action are based on CVIN's alleged breach of the contracts and/or CENIC's purported liability for CVIN's conduct as its "partner." Claims one through fourteen are for breach of each of the fourteen contracts MP entered into for the construction of the Project. FAC at 19 -35. Claims fifteen through 28 are for breach of an express warranty of plans and specifications that MP alleges was contained in each of the contracts. *Id.* at 35-42.[4] Claims 29 through

---

[4] Although claims sixteen through 28 do not specify which warranty was allegedly breached, claim fifteen makes clear that

42 are for CVIN's alleged violation of § 8800 for "fail[ing] to pay [MP] for the completed bid units as required by the Contracts." *Id.* at 43-53; FAC ¶ 329. Claims 43 through 54 are for CVIN's alleged violation of § 8812 for "wrongfully withholding, and continued withholding, of retained funds." *Id.* at 54-63; FAC ¶ 446. Section 8812 relates to "a retention payment withheld by an owner from a direct contractor or by a direct contractor from a subcontractor." Cal. Civ. Code § 8810. Claim 55 seeks a foreclosure of a mechanics lien predicated on MP's allegedly superior possessory rights to the Project under the contracts. *See* FAC ¶¶ 562, 568-570. MP's claim for quantum meruit (claim 56) seeks the money MP is allegedly owed pursuant to the contracts. FAC ¶¶ 579-582. Likewise, MP's 57th cause of action for injunctive relief on the ground CVIN has breached the contracts and thus has wrongfully possessed parts of the Project. *Id.* ¶¶ 586-588, 593.[5] Claim 58 asserts that § 8710 "requires CVIN to post security for CVIN's payment obligation to [MP] under [the] Contracts," which CVIN has failed to do. *Id.* ¶¶ 598, 601, 602. Finally, MP's last cause of action (claim 60) seeks "a judicial determination of the rights and obligations of each of the parties under the Contracts." *Id.* ¶ 624.

Because the Court finds that the FAC fails to state with sufficient facts how CENIC is liable to MP either on a contract theory or on the ground that CENIC is CVIN's partner, the Court GRANTS WITH LEAVE TO AMEND CENIC's motion to dismiss in its entirety.[6] In the absence of a contractual- or partnership-based duty to CVIN, CENIC cannot be liable for any of MP's claims as currently pled in the FAC.

C.     **The Member Defendants' Motion to Dismiss.**

The Member Defendants move to dismiss the FAC in its entirety for largely the same reasons as does CENIC. The Member Defendants' primary argument is that that the FAC fails to state a claim

---

MP's claims for breach of express warranty (claims fifteen through 28) are for the alleged breach of the warranties provided for in the contracts. *See* FAC ¶¶ 250-259.

[5] Because MP "does not object to the Court dismissing [claim] fifty-seven," Doc. 73 at 20, the Court GRANTS WITHOUT LEAVE TO AMEND the Member Defendants' motion to dismiss claim 57.

[6] For the reasons discussed above, the Court DISMISSES WITHOUT LEAVE TO AMEND MP's claim for unjust enrichment against CENIC.

against them because it is premised on MP's allegation that the Member Defendants are merely alter egos for CVIN. *See* Doc. 61 at 2. The Member Defendants assert that the FAC does not allege facts sufficient for MP to proceed on that theory of liability.

MP's alter ego theory must be analyzed pursuant to California law. *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 337 (9th Cir. 1977). "The basic rule stated by [the California] Supreme Court as a guide in the application of [the] doctrine [of alter ego] is as follows: The two requirements are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962); *see also Automotriz Del Golfo De California v. Resnick*, 47 Cal.2d 792, 796 (1957).

A litany of different circumstances may be sufficient for a finding that an entity is another's alter ego such that the latter should be liable for the conduct of the former. *See Associated Vendors*, 210 Cal. App. 2d at 838-40. "Factors that courts have found militated towards finding alter ego liability include commingling of assets, treatment of the assets of the corporation as the individual's own, failure to maintain corporate records, employment of the same employees and attorneys, undercapitalization, and use of the corporation as a shell for the individual." *Ontiveros v. Zamora*, CIV S-08-567LKK/DAD, 2009 WL 425962, at *7 (E.D. Cal. Feb. 20, 2009) (citing *id.*).

MP alleges that the "Member Defendants are liable for the acts of CVIN alleged in this Complaint as its alter ego," FAC ¶ 115, and that that "[t]here is such a unity of interest and ownership between the CVIN Member Defendants and CVIN that the separate personalities of CVIN and the CVIN Member Defendants do not, in reality, exist." *Id.* ¶ 120. MP claims that the "Member Defendants used CVIN as a mere shell, instrumentality, or conduit for the construction of the Project by the CVIN Member Defendants," *id.* ¶ 116, and "used . . . CVIN to contract with [MP] with intent to avoid performance and attempt to use CVIN as a shield against Member Defendants' liability." *Id.* ¶ 119.

According to MP, the "Member Defendants control all of the shares of CVIN and . . . failed to

sufficiently capitalize CVIN at the risk of the business of CVIN." *Id.* ¶ 117. MP claims that "CVIN's net assets were only $1,300,000 as of 2009 yet it undertook the Project with a cost of over $67,000,000." *Id.* ¶ 66. MP alleges that "[b]ased on [CVIN's] application for [America Recovery and Reinvestment Act] funding . . . CVIN is grossly undercapitalized in light of [its] contractual obligations" that pertain to the Project. *Id.* ¶ 114. MP alleges that the Member Defendants "organized and carried on the business of CVIN without substantial capital or sufficient assets available to meet prospective liabilities." *Id.* ¶ 117. MP thus claims that "[t]he capital of CVIN is . . . trifling compared with its business and risks of the Project. As a result, CVIN is without assets to meet its debts, including the obligations to MP." *Id.*

> In summary, MP claims that
>
> Member Defendants have treated the assets of CVIN as their own; have failed to adequately capitalize CVIN; have failed to maintain arm's length relationships between CVIN and the CVIN Member Defendants; have diverted assets from CVIN to themselves and to related entities to the detriment of creditors; and have manipulated the assets and liabilities of CVIN so as to concentrate the assets in the CVIN Member Defendants and the liabilities in CVIN.

*Id.* ¶ 122. "As a result, CVIN is without assets to meet its debts, including the obligations to [MP] alleged in [the FAC]." *Id.* MP argues that the "Member Defendants have improperly benefited through the manipulation of CVIN and have left CVIN without assets sufficient to satisfy CVIN's obligations in the hopes of preventing CVIN's creditors, including [MP], from making any recovery." *Id.* ¶ 121.

The Court finds that these allegations are insufficient for MP to proceed on an alter ego theory of liability against the Member Defendants. In essence, MP alleges that CVIN is a "shell" that the Member Defendants kept undercapitalized and used to avoid liability. *See* Doc. 73 at 11 ("[MP] has specifically pled two independent theories, undercapitalization and shell/instrumentality/conduit"). But MP does not provide factual support for these theories beyond conclusory allegations. *See generally* FAC ¶¶ 115-121. MP does not, for instance, explain in any specific factual detail how the Member Defendants—10 separate, independent entities—have "such a unity of interest and ownership" of CVIN that they control it in such a way that there is no effective distinction between them and CVIN. Likewise, MP has failed to provide sufficient facts to demonstrate how the Member Defendants disregarded the corporate separateness of CVIN. *See Mid–Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992) ("It is

the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity"). MP "merely recite[s] the factors that a court considers in evaluating alter ego claims." *Kingsburg Apple Packers, Inc. v. Ballantine Produce Co., Inc.*, No. 09-CV-901-AWI-JLT, 2010 WL 2817056, at *5 (E.D. Cal. July 16, 2010). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003). Accordingly, the Court finds that MP cannot proceed on a theory of alter ego liability against the Member Defendants as currently alleged in the FAC.

As discussed above, all of MP's causes of action are based on CVIN's alleged breach of the contracts and/or CENIC's purported liability for CVIN's conduct as CVIN's "partner." Likewise, all of MP's claims against the Member Defendants are based on their purported liability for CVIN's conduct as CVIN's alter egos. *See* Doc. 73 at 18 (MP acknowledging that "[t]he Member Defendants' liability . . . on all claims in the Complaint, arises from their alter ego liability for CVIN's actions"). As such, all of MP's claims against the Member Defendants are contingent on a finding that they are liable for CVIN's conduct as CVIN's alter egos. *See id.* In the absence of any contract- or alter ego-based liability, all of MP's claims fail as alleged against the Member Defendants. Thus, the Court GRANTS WITHOUT LEAVE TO AMEND the Member Defendants' motion to dismiss MP's unjust enrichment claim[7] and GRANTS WITH LEAVE TO AMEND the Member Defendants' motion to dismiss MP's remaining claims.[8]

## VI. CONCLUSION AND ORDER

---

[7] MP's unjust enrichment claim against the Member Defendants is premised on their alleged liability as CVIN's alter egos. Thus, MP's unjust enrichment claim against the Member Defendants is necessarily based on CVIN's alleged contract-based liability to MP. As with CVIN, MP may not assert an unjust enrichment claim while asserting contract-based claims. *See Berkla*, 302 F.3d at 918.

[8] The Member Defendants also move to strike all of MP's allegations concerning its alter ego theory of liability under Fed. R. Civ. P. 12(f). Fed. R.Civ. P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992).The Court DENIES the motion to strike because the Member Defendants' potential liability as CVIN's alter ego indisputably bears on the subject matter of this litigation.

For the foregoing reasons, the Court ORDERS that:

1. MP's claim for unjust enrichment is DISMISSED WITHOUT LEAVE TO AMEND;

2. MP's claim for injunctive relief is DISMISSED WITHOUT LEAVE TO AMEND;

3. MP's remaining claims are DISMISSED WITH LEAVE TO AMEND as to CENIC and the Member Defendants;

4. CVIN's motion to dismiss MP's 58th cause of action is DENIED.

5. The hearing on the pending motions to dismiss (Docs. 56, 57, 61) is VACATED.

MP shall have one opportunity to file and serve an amended complaint in an attempt to cure the deficiencies described herein. Any such amended complaint shall be filed and served within 20 days of electronic service of this order. Defendants no later than 20 days after service of the amended complaint shall file a response thereto.

IT IS SO ORDERED.

Dated:   **July 7, 2014**                              /s/ Lawrence J. O'Neill
                                                      UNITED STATES DISTRICT JUDGE